(71 Misc. Rep. 552.)

HOOK v. GERMAN–AMERICAN BANK et al.

(Supreme Court, Equity Term, Monroe County. April 15, 1911.)

1. MUNICIPAL CORPORATIONS (§ 485*)—PUBLIC IMPROVEMENTS—BONDS—STATUTORY RIGHTS.

Laws 1892, c. 603, as amended by Laws 1895, c. 438, authorized commissioners to issue certificates of indebtedness to pay for the construction of a sewer in cities and towns, an assessment for the cost of the improvement to be levied on the property benefited. Each certificate issued reserved to the commissioners the right to pay the same at any time after two years from the date thereof. The city treasurer in good faith paid some of the certificates in full, resulting in a deficiency, so that other certificates could not be paid in full. Laws 1904, c. 620, provided for the appointment of collectors of assessments, and declared that the moneys collected should be paid to the county treasurer, but made no provision

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for any distribution of the fund. *Held*, that the county treasurer had no implied power to recover from the city treasurer moneys which he had distributed to certificate holders, nor from certificate holders who had been paid in full.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 485.*]

2. MUNICIPAL CORPORATIONS (§ 485*)—PUBLIC IMPROVEMENTS—BONDS—STATUTORY RIGHTS.

An assignee of unpaid certificates, issued as authorized by Laws 1892, c. 603, as amended by Laws 1895, c. 438, for the construction of a sewer in a city and town, who sues the city treasurer and certificate holders paid in full, on his own behalf and on behalf of other certificate holders similarly situated, and who prays for general relief against the city treasurer and certificate holders paid in full, is entitled to such relief as he and other certificate holders similarly situated may assert under the facts.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 485.*]

3. MUNICIPAL CORPORATIONS (§ 485*)—PUBLIC IMPROVEMENTS—BONDS—STATUTORY RIGHTS.

Laws 1892, c. 603, as amended by Laws 1895, c. 438, authorized commissioners to issue certificates of indebtedness for the construction of a sewer in a city and town, an assessment for the cost to be levied on the property benefited. Each certificate issued reserved the right to pay the same at any time after the expiration of a specified time. Laws 1898, c. 315, transferred the funds to the city treasurer, and authorized him to issue a new series, and with the proceeds thereof, together with the available moneys in his hands, to redeem the original certificates. The city treasurer in good faith paid from available moneys some of the certificates in full, without issuing new certificates. *Held*, that the holders of unpaid certificates could not complain of the action of the city treasurer, so far as he applied available funds in the payment of certificates.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 485.*]

4. MUNICIPAL CORPORATIONS (§ 485*)—PUBLIC IMPROVEMENTS—BONDS—STATUTORY RIGHTS.

Laws 1892, c. 603, as amended by Laws 1895, c. 438, authorized the issuance of certificates of indebtedness for the construction of a sewer in a city and town, an assessment for the cost to be levied on the property benefited. Each certificate issued reserved the right to pay the same at any time after the expiration of a specified date. Some of the certificates were paid in full, and the amount realized from the assessments was insufficient to pay the remainder in full. *Held*, that the holders of the unpaid certificates were not entitled to recover from the holders paid in full a sum sufficient to pay all the certificate holders a pro rata amount, because the holders paid in full received only what they were entitled to under their certificates.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 485.*]

Action by Carroll L. Hook, on behalf of himself and others, owners of west side sewer bonds, against the German-American Bank and · others. Complaint dismissed.

Plaintiff, who is the owner of 13 of the bonds or certificates of indebtedness of $500 each issued by the commissioners of sewerage for the Tenth, Fifteenth, and Twentieth wards of the city of Rochester and the town of Gates, brings this representative action on behalf of himself and all other owners of similar bonds and certificates to recover for the county treasurer of Monroe county and in his right, he having refused upon demand

*For other cases see same topic & § NUMBER in Dec. & Am. Dig's. 1907 to date, & Rep'r Indexes

to bring the action, from bond or certificate holders who have had their bonds paid in full, such sums as would place all the bondholders on a plane of equality, and also to recover from the defendant Williams, or to hold him liable for the amount so sought to be recovered, on the theory that he, as city treasurer, improperly and without right, paid the bonds of the defendants in full, to the prejudice of the plaintiff and other bondholders.

The so-called "west side sewer" was constructed by virtue of chapter 603 of the Laws of 1892, as amended by chapter 438 of the Laws of 1895. Pursuant to these statutes, three commissioners were appointed, and the power was vested in them to acquire the lands and easements and construct the sewer and to pay the expense thereof from assessments levied and collected by them from the property benefited. The assessments were made payable in three equal payments, one in thirty days, one in one year, and one in two years from the completion of the assessment roll, which was to be made from the commissioners' determination of the probable expense of the work before the commissioners entered upon the construction of the sewer. The assessments were to be a lien upon the lands assessed and a personal liability of the owner.

By section 11 of the act the commissioners were authorized to issue certificates or evidences of indebtedness, bearing interest at 6 per cent. per annum, in payment of any lands, easements, work, materials, or other expenses incurred by them, which certificates were to be receivable in payment of assessments at their face value, with accrued interest. By section 12 provision was made for further assessments from time to time, in case the first assessment was found to be insufficient to defray the cost of the work. By section 13, in case the commissioners should deem it necessary to raise funds for the construction of the sewer before the assessments could be made and collected, they were empowered "from time to time to borrow so much money as, in their opinion, may be necessary therefor, and to issue evidence of indebtedness in such sums and form as they may deem proper, bearing interest at the rate of 6 per cent. per annum, payable semiannually, the principal thereof payable in not more than ten years. Such certificates of indebtedness shall be negotiable by delivery and shall be receivable in payment of any assessment levied by such commissioners; and the interest thereon shall be assessed as a part of the expense in the construction of said sewer." By section 20 the commissioners were required upon completion of the sewer to file with the treasurer of the city of Rochester all their books, records, and papers, and to turn over the assessment roll and all moneys on hand, and all uncollected assessments and papers connected therewith. Thereupon it was provided that said treasurer should discharge all duties and possess all powers imposed upon or vested in the treasurer of said commission, and all powers of the commissioners in reference to issuing warrants for the collection of assessments, the collection thereof, and the sale of lands in default of payment, and, further, that when the assessments had been collected in full, and all outstanding legal obligations incurred by the commissioners paid, the treasurer was directed to return on demand to the persons assessed any surplus remaining in his hands in proportion to the amount each had paid, and that "sixty days after said sewer shall have been completed or the final estimate for the work performed by the contractors shall have been made and approved by said commissioners, their duties and powers shall cease."

Prior to August, 1896, the commissioners had issued about $200,000 of bonds or certificates. These were subsequently retired by them from the proceeds of the bonds or certificates issued in August of that year. Beginning in August, 1896, the commissioners issued bonds or certificates to the total amount of $453,500. Of these, $3,000 par value were retired by the commissioners, being accepted by them in payment of assessments. Each certificate was for $500, bearing interest at 6 per cent., payable semiannually the principal due and payable on February 1, 1904, and each recited that it was one of a series of 1,000 bonds, of $500 each, of like tenor and effect, issued in pursuance of the provisions of chapter 603 of the Laws of 1892 and the several acts amendatory thereof and supplementary thereto. Each contained this clause: "The said commissioners reserve the right of

paying this bond at any time when interest is payable after the expiration of two years from the date hereof." Each was signed by the commissioners and in the following form as regards the promise of payment: "The commissioners of sewerage for the Tenth, Fifteenth, and Twentieth wards in the city of Rochester and town of Gates, Monroe county, N. Y., hereby acknowledge themselves indebted as such commissioners to the bearer or registered owner hereof, or to the legal representative of such registered owner as hereinafter provided, in the sum of $500 in lawful money of the United States, which sum they, as such commissioners, promise to pay to the bearer, or to the registered owner hereof, or to the legal representative of such owner, at the office of the Security Trust Company in the city of Rochester, N. Y., on the 1st day of February, 1904, with interest thereon at the rate of 6 per cent. per annum, payable semiannually on the 1st day of the months of February and August in each year as the same shall become due and payable, at the office of the Security Trust Company, upon the presentation or surrender of the interest warrants or coupons hereto attached as they severally become due and payable."

On the 19th of April, 1898, the Legislature adopted chapter 315 of the Laws of that year, entitled "An act to provide for the transfer to the treasurer of the city of Rochester of certain powers of the commissioners of sewerage for the Tenth, Fifteenth and Twentieth wards in the city of Rochester, and the town of Gates, Monroe county." This act recited that the commissioners, having completed the construction of the sewer provided for in chapter 603 of the Laws of 1892 as amended, were required within 20 days after the passage of the act to transfer to the treasurer of the city of Rochester all records and proceedings of the commissioners, together with the assessment roll and all moneys collected and all other funds in the hands of the commissioners, "whereupon the powers and duties of the said commissioners under the said acts shall cease, except as hereinafter provided." By section 2 the treasurer was empowered to issue and offer for sale and sell assessment bonds to the amount of $400,000 or so much thereof as should be required, to bear interest at the rate of 4½ per cent., and that the proceeds of the sale of said bonds, "together with the available moneys in his hands as the successor in office of the said commissioners, the said treasurer of the city of Rochester shall redeem and cancel the certificates of indebtedness or assessment bonds heretofore issued by the said commissioners of sewerage. * * * Such redemption shall be made on the first day of August, eighteen hundred and ninety-eight, or at the earliest practicable date thereafter." By section 5 said treasurer was authorized to make further assessment, if necessary, to pay in full the bonds issued by him. By section 6 said commissioners were required to transfer to said treasurer all interest, liens, or titles to any lands acquired by them on any sale for unpaid assessments, and said treasurer was empowered to dispose of the same or any titles that might be acquired by him, the proceeds thereof, after deducting expenses, "to be used for the redemption of the outstanding bonds issued by the said commissioners of sewerage or issued by the said treasurer." .

The defendant Williams was city treasurer in 1898, and continued as such until January 1, 1904. He received from the commissioners their books, records, and papers and the balance of cash collected by them upon assessments not otherwise expended, and thereupon he proceeded to make collections of unpaid assessments. On August 1st of that year he called and retired about $50,000 of these bonds, and during his administration until January 1, 1904, he paid in full from time to time from the assessment fund $109,500 of these bonds. He received and retired in payment of assessments about $100,000 of these bonds. During all this time assessments were being collected from time to time and the fund was kept on deposit in banks, some of it drawing interest at the rate of 2 per cent. per annum and some drawing no interest. On January 1, 1904, a new city treasurer came into office, who administered the fund from that date until about June 25th of the same year, during which time no bonds were paid, but some were received in settlement of assessments.

On May 6, 1904, the Legislature adopted chapter 620 of the Laws of that year, entitled "An act to provide for the collection of the unpaid assessments

for the construction of a sewer in the Tenth, Fifteenth and Twentieth wards of the city of Rochester and the town of Gates in the county of Monroe." This act provided for the appointment of two collectors, one for the city of Rochester, and one for the town of Gates, to collect the unpaid assessments. It directed that on the 23d of June the said treasurer should deliver to the county treasurer of Monroe county all the assessment rolls and other property relating to this sewer in his possession and all moneys on hand, and required the collectors to pay over to the county treasurer all funds collected by them upon these assessments, but made no provisions for the payment of the outstanding bonds or certificates. The collectors proceeded to collect in assessments, and a fund accumulated in the hands of the county treasurer to the amount of about $90,000, when the Security Trust Company, the holder of some of these bonds, in the year 1907 began a proceeding by mandamus to compel the county treasurer to distribute the fund on hand among the bondholders. That proceeding (People ex rel. Security Trust Co. v. Treasurer, 191 N. Y. 15, 83 N. E. 661) resulted in an order by which the county treasurer was compelled to pay upon each of the outstanding bonds a portion of the fund on hand to the amount of $158.05 upon each of the 488 bonds then outstanding. These payments reduced the principal of the outstanding bonds to $168,610.15. The county treasurer still has on hand $41,790.26, and there are a few unpaid assessments from which it is expected the collectors will realize a few hundred dollars, in addition to about $1,500 due from the state of New York, which will in time be paid. Thus about $125,000 is necessary to pay the balance due of principal on the outstanding bonds, and no interest has been paid on these bonds since their maturity in 1904.

Carnahan, Adams, Jameson & Pierce, for plaintiff.
S. D. Bentley, for defendant Mary Ross Potter.
Henry G. Danforth, for defendant Rochester City Hospital.
Taylor, Goodwin & Moser, for defendants German-American Bank and others.
G. E. Wynkoop, for defendant Horace McGuire.
Plumb & Plumb, for defendant Plumb.
Wile & Oviatt, for defendant Reed.
B. B. Cunningham, for defendant S. B. Williams.

FOOTE, J. Plaintiff is the assignee of 13 bonds or certificates of indebtedness acquired by him shortly before this action was begun. He requested the county treasurer to bring an action against the defendants to recover from them enough of the money paid upon their bonds to be applied upon the bonds still outstanding to equalize all the bondholders, so that the apparent loss will fall equally upon all. The county treasurer having declined to bring such an action, plaintiff seeks to assert here the supposed right of the county treasurer in that respect. Hence the recovery asked is that defendants pay the sums required to the county treasurer, to be by him distributed to the present bondholders. This is upon the theory that the assessment fund is a trust fund and the county treasurer is the present trustee and that the bondholders are the beneficiaries, and that a portion of the fund has been improperly or at least inequitably diverted from the holders of the outstanding bonds to pay the retired bonds in full; the fund not being sufficient to pay all in full.

[1] The county treasurer derives his powers from the statute. Chapter 620 of the Laws of 1904. By that statute two collectors are directed to be appointed, in whom are vested all the powers and duties of the city treasurer in respect to collecting further assessments, and

these collectors are directed to pay all moneys collected by them to the county treasurer. The city treasurer is directed to turn over to the county treasurer all assessment rolls and other property received by him from the commissioners of sewerage, and to "pay to the county treasurer of Monroe county all sums of money remaining in his hands arising from the collection of assessments for said west side sewer." The statute further provides that:

"The money received by the treasurer of Monroe county shall be deemed as to the custody of the same as funds of the county of Monroe and shall be known as the west side sewer funds, and shall be deposited with any bank or trust company authorized to receive funds for the county of Monroe."

No provision is made in the statute for any distribution of the fund by the county treasurer, nor are any powers conferred on him in respect of the fund except those stated. The Court of Appeals has held (People ex rel. Security Trust Co. v. Treasurer, 191 N. Y. 16, 83 N. E. 661) that the power to distribute the fund by the county treasurer is necessarily implied, for the reason that the Legislature could not divert the funds to any other purpose than payment of the outstanding certificates. It does not follow, however, that the county treasurer has an implied power to recover from the former city treasurer moneys which he had distributed to the bondholders, or from the bondholders the moneys so distributed, and I think the county treasurer would have no standing to maintain such an action. Hence, so far as this action proceeds upon the supposed right of the county treasurer, it cannot be maintained.

[2] But the plaintiff has also asked for general relief, and may, no doubt, have in this action such relief as plaintiff and the other bondholders, in whose behalf the action is prosecuted, may assert in their own right. Any recovery by the plaintiff from the defendant Williams, or the other defendants, must be based upon some violation of the plaintiff's rights. It must be adjudged that City Treasurer Williams did him some wrong in paying in full the bonds which he paid to the other defendants before a recovery can be had against him, and that the other defendants owe some duty or obligation to plaintiff to refund either to Williams or the plaintiff the moneys received by them in excess of their pro rata share of the whole fund before recovery can be had of them, and this is true whether the fund is treated as a trust fund or not.

It is conceded that the city treasurer acted in entire good faith in paying the bonds which he paid in full. He took charge of the fund early in the year 1898. The bonds did not mature until 1904; but there was contained in each bond the option to pay it at any time after two years, and that option became available to the treasurer on the 1st of August, 1898. He then retired about $50,000 of bonds. He did not do it as a favor to the holders of the bonds, but as a protection to the fund; for the bonds were drawing 6 per cent. interest, while he could get but 2 per cent. for part of the fund, and no interest at all for the rest.

[3] The statute which had transferred the funds to his hands (chapter 315, Laws 1898) he construed to authorize the retirement of the

bonds as fast as he was able to do so. This statute in section 2 authorized, but did not require, him to issue a new series of assessment bonds, bearing 4½ per cent. interest, and further provided as follows:

"With the proceeds of the sale of said bonds [new assessment bonds], *together with the available moneys in his hands* as the successor in office of the said commissioners the said treasurer of the city of Rochester *shall redeem and cancel* the certificates of indebtedness or assessment bonds heretofore issued by the said commissioners of sewerage. * * * Such redemption shall be made on the first day of August, 1898, or at the earliest practicable date thereafter."

This date was, as before stated, the first date on which the bondholders could be compelled to accept payment by virtue of the option clause in the bonds. It does not appear that the city treasurer then knew or had reason to expect there would be a deficiency and that the uncollected assessments would not realize enough to retire all the bonds in full. Moreover, his power under the statute to issue and dispose of the new 4½ per cent. bonds was a continuing power, and the statute provided for a further assessment to pay such new bonds, in case the existing assessment proved insufficient. The scheme of the statute did not contemplate a partial payment upon any bond. The bond itself did not authorize a partial payment at any time before its maturity in 1904. The privilege reserved for payment before maturity was for full payment, and no holder could have been compelled to accept anything less. The scheme of the statute was also to take care of any deficiency in the fund in the end by further assessment upon the property benefited, and did not contemplate or require a pro rata division of the fund at any time.

I think the treasurer's construction of the statute was correct, and that it was his duty to retire bonds in full from and after August 1, 1898, as fast as the assessment fund available for that purpose would permit, and if he is chargeable with any fault, it can arise only from his failure to make and dispose of the new 4½ per cent. bonds, or to take steps for the making of a further assessment. But the plaintiff finds no fault with the treasurer in these respects, and no such question is involved here.

[4] Has the plaintiff a right, legally or equitably, to compel the defendants bondholders to contribute to the plaintiff and the other holders of outstanding bonds, so as to put them all on a plane of equality in respect of the assessment fund?

In considering this question, we will assume that the total amount realized from the assessments may now be determined with reasonable certainty, that there will be a deficiency of upwards of $125,000, that the statutory provisions for a new assessment are not now available, and that in the absence of new legislation, the loss arising from the insufficiency of the original assessment will fall upon the present bondholders.

Undoubtedly, if the whole fund were now in court, it would be directed to be distributed ratably among the bondholders. The maxim, "Equality is equity," would be applied. But may we lay hold of that maxim to compel contribution from the bondholders paid in full? The plaintiff relies largely upon certain expressions in the opinion of Chief

Judge Cullen in the case of People ex rel. Security Trust Co. v. Treasurer, supra, as follows:

"There is no express direction in the statute for the payment of the certificates of indebtedness out of the moneys collected on the assessments, but this is the plain scheme and intent of the act. The credit of no municipality was pledged for the payment of the bonds, and the sole reliance of the creditor was necessarily limited to the assessment fund. The sole security for the payment of the certificate held by the relator was the proceeds of the assessment levied for the improvement. But to such proceeds it, with the other certificate holders, had an absolute contract right, of which it could not be deprived, either by subsequent legislation or any failure to enact appropriate legislation."

This was said in a case where a certificate holder was seeking by mandamus to compel the county treasurer to distribute the fund in his hands pro rata upon the outstanding bonds. It was begun in 1907, after the bonds were long overdue. The sole question was whether the courts should compel a distribution without waiting until the few remaining assessments were collected. There was no controversy as to the relative rights of the bondholders as between themselves; but the county treasurer doubted his power under the statute to distribute the fund, and so refused to act. By the terms of the statute he was the mere custodian of this fund and had no power to dispose of it in any form. The question was whether that power was implied from the nature of the fund, the previous statutes, and the object for which the fund was created. These were the questions which the court was dealing with, and the expression quoted was used in the course of the consideration of those questions, and no others.

But, assuming that the expression is strictly accurate when applied to the questions presented here, and that the certificate holders had and have an absolute contract right in the assessment fund of which they cannot be deprived by legislation or otherwise, what is the nature and extent of that contract right? It is, as I think, a right to be paid in full, exactly like the right of a creditor to have his debtor pay the debt in full. The bondholders who have been paid in full have received nothing beyond their contract right in the fund. They have been guilty of no wrong in receiving it. Many of them, it appears, were compelled to receive payment against their wishes, under penalty of having the interest cease upon their bonds. There was no contract between them and the other bondholders that was violated. Indeed, the case seems to stand, on principle, on all fours with that of the diligent or fortunate creditor who receives his pay from a debtor, who afterward becomes insolvent before other creditors are paid; the only difference being that in our case the bondholders' claim is against a fund, and not an individual—not a fund limited in amount for equal distribution among a certain class, but a fund designed to pay each bond in full; a fund to be replenished by statutory method, if found insufficient, the surplus, if any, to be returned to the parties contributing to the fund. It does not fall within the principle upon which courts of equity have been in the habit of compelling contribution as between sureties, copartners, or tenants in common.

The rights and equities of the present bondholders are against the land benefited by the sewer. These lands have received the benefit of

the plaintiff's money. Upon them rests the moral and equitable obligation to pay plaintiff's bonds, and not upon the defendants who have received only their just due. The lack of equity in the plaintiff's case might be more apparent if the fund had been ample for the payment of all bonds, and after defendants' bonds were paid the remainder of the fund had been lost through its embezzlement by some custodian.

But it is said that the plaintiff has a right of recovery upon the promise implied by law from the duty resting upon one who wrongfully withholds from another money which he cannot conscientiously retain to account for it and restore it to the person or party equitably entitled thereto. In such a case, an action for money had and received may be maintained. But the difficulty under which the plaintiff labors is to show that the withholding of any money by the defendants is wrongful. Why may not the defendants conscientiously retain the money they received on their bonds? It was due them. It was not wrongful for them to receive it. They had not agreed not to receive it, unless the plaintiff also received payment of his bonds. It was not received as a pro rata share of a common fund to be apportioned. It was not a common fund, in the sense that each was to share in the fund whatever its amount. It was rather a fund created by the owners of the land benefited by the sewer to pay the money borrowed to build the sewer. As to them it was a common fund, in which each had a pro rata share or interest. But as to the bondholders it was the right of each to receive from it the full amount of the bonds and interest, and no more. The statute did not require the commissioners of sewerage to issue these bonds in any particular form, or to make them all payable at the same time. They were all to be payable within 10 years, but within that time they might lawfully have been made payable on their face at different periods; hence it was not the scheme of the statute that a general fund be collected and held together until all bonds matured, for division among the bondholders.

But, if the plaintiff has a right to complain now, he would have had the same right in principle to complain if the bonds had been made payable some in each year; and in that case, if the plaintiff is right now, the holders of the bonds last maturing, in case of deficiency in the fund, could have recovered from those paid in due course according to their terms. So, if the plaintiff now has an equitable right to compel contribution from defendants, he must have that right also against the persons not defendants who have received payment of their bonds in full to the extent of upwards of $100,000, by surrendering them in payment of assessments made upon their lands for the construction of the sewer. True, the statute authorized the bonds to be so used, but so did it authorize or contemplate that the defendants' and all other bonds should be paid in full; and if a deficiency in the fund works an equitable right to have the fund restored by contributions to a basis of equality among all bondholders, I perceive no sufficient reason for making a distinction between the defendants who are paid in money and the other bondholders, not defendants, who were paid by using their bonds as money to pay their assessments.

The conclusion follows that the assessment fund, whether it be tech-

nically a trust fund or not, has not been diverted from the purpose for which it was created; that there has been no violation of duty by the city treasurer, whether a technical trustee or not; and that no equitable or legal duty rests upon the defendant Williams, or the defendants who were bondholders, to restore or contribute to the assessment fund or to the plaintiff and those in whose behalf he sues.

As the questions considered go to the basis of the plaintiff's right of recovery in any form of action, it is unnecessary to consider whether the action should be at law or in equity, or what statute of limitations applies, or the legal effect of the accounting, so called, of Williams as treasurer in the Monroe County Court, or as to whether the power to impose a new assessment for the deficiency in the fund still exists.

The plaintiff's complaint must be dismissed, with costs in favor of each defendant or set of defendants appearing and answering by separate attorneys.

Findings will be settled upon two days' notice.